STATE OF HAWAII, Plaintiff-Appellee, *v.* ROBERT EDSON KAHINU aka John T. Cazar, Defendant-Appellant

No. 5143

June 5, 1972

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY LEVINSON, J.

On July 13, 1970, a jury returned a verdict in the circuit court finding Robert Edson Kahinu, the appellant herein, guilty of burglary in the first degree and assault with intent to rape.[1] During the course of the trial, the complainant testified that, as she was preparing for retirement sometime after midnight, January 5, 1970, the appellant broke into her apartment, pushed her to the floor, displayed a switchblade knife, forced her to engage in an act of sexual intercourse, and refused to leave until approximately 5:15 A.M., at which time the complainant succeeded in persuading him that she had to leave for work. There was no additional eyewitness testimony and a medical examination of the complainant was never conducted. The appellant raised the defense of general denial. Although he did not take the witness stand, his mother, Mrs. Genevieve Kahinu, testified that her daily journal indicated that the appellant had been at home when the crimes were alleged to have been committed. The appellant's half brother testified that he had observed an individual, in the vicinity of Waikiki, who closely resembled the appellant.

On appeal, the appellant raises a number of troubling issues. He argues: 1) that he was denied due process of law and the effective assistance of counsel, in violation of the sixth and fourteenth amendments of the United States Constitution,[2] when the complainant was permitted to testify

---

[1]The appellant was acquitted of an additional charge of burglary in the second degree.

[2]The fourteenth amendment of the United States Constitution provides in pertinent part:

. . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . . .

The sixth amendment of the United States Constitution provides in pertinent

to certain admissions which the appellant allegedly made to her, after the state had failed to comply with a court order allowing the appellant pretrial discovery of any such recorded statements; 2) that the circuit court's refusal to order the complainant to submit to a pretrial psychiatric examination constituted an abuse of discretion; and 3) that the circuit court erred in denying his motion for a mistrial when a police officer testified on direct examination that at the time of the complainant's photographic identification of the appellant, he was "in police custody on another case." We are unable to accept any of the appellant's contentions.

## I. THE ADMISSIONS

Prior to trial, defendant filed a motion "for discovery and inspection," which included a request that the court issue an order directing the prosecuting attorney to furnish defendant with copies "of all written or oral, but recorded, statements, admissions or confessions made by the defendant, whether signed or unsigned and whether made prior to or after his arrest . . . ." During a pretrial hearing held in the circuit court on May 20, 1970, the following exchange transpired among the defense counsel (Edmunds), the prosecutor (Ching) and the court:

> MR. EDMUNDS: Well, I'd like both, Your Honor—pretrial and discovery. But I'd like the discovery I filed for in his motion, Your Honor—any statements she's made, any pictures taken of [the appellant].
>
> THE COURT: I'll deny that as being against the tenor of Rule 17. But other matters like statements of the accused, of course, you know that you're entitled to that.
>
> . . . .
>
> MR. CHING: Your Honor, there were some statements made to her—admissions to her by the defendant

---

part:
  In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.

at the scene.

THE COURT: And you have that?

MR. CHING: Yes.

THE COURT: Well, I think Mr. Edmunds is entitled to that.

Subsequently, there was a shift in prosecutorial personnel, as a result of which Joseph A. Kinoshita replaced Mr. Ching as prosecutor in the instant case. At a later hearing, held on June 25, 1970, defense counsel sought to inform the court that the state had failed to comply with the court's discovery order:

MR. EDMUNDS: Your Honor, before I argue, I would like to have the record reflect the fact, which I did not set forth in my affidavit, that the last time we were here, Your Honor did direct Mr. Lloyd Ching to produce certain documents—statements made by—

THE COURT: You mean statements made by the accused?

MR. EDMUNDS: Allegedly made by the accused. That has not been done.

THE COURT: If he has statements which appear to be made by the accused, produce it.

MR. EDMUNDS: That hasn't been done.

THE COURT: If there are statements made by the defendant and reduced to the written form, please see that the defendant or his counsel gets a copy of it.

By the date of trial, July 10, 1970, the state still had produced nothing. Defense counsel called this fact to the court's attention, whereupon the prosecutor represented to the court that "we have no admissions for this case." Defense counsel then moved that any future testimony relating to such admissions be suppressed or that a continuance be granted so that he might inspect them. The court denied the motions, remarking that "you can't tie the Court's hands that tight. I will rule on it as it—."

Later that morning, the prosecutor in fact sought to elicit testimony from the complainant relating to statements purportedly made to her by the appellant. Defense counsel

objected, and the court conducted the following bench conference:

MR. EDMUNDS: Your Honor, now we are getting the admissions that we asked for and that your Honor ordered the Prosecution to produce and which they didn't.

MR. KINOSHITA: You meant the admissions to the police officer.

MR. EDMUNDS: No, we asked for all admissions. And it was my understanding that we were going to get them.

MR. KINOSHITA: I thought you said police admissions.

THE COURT: I don't recall exactly what position Ching took when he said he had them or didn't have them.

MR. EDMUNDS: Your Honor denied my motion in all particulars except as to the admissions.

THE COURT: What did Ching say?

MR. EDMUNDS: And Ching said they had them. And your Honor said, "Give them to Edmunds." They have never given them.

MR. KINOSHITA: Your Honor, his discovery motion was very inaccurately stated. We thought he was referring to police admissions.

THE COURT: There has been some misunderstanding.

MR. KINOSHITA: But this was exactly what was said to her.

THE COURT: Was that reduced to writing at all? Do you people have it?

MR. KINOSHITA: Just some explanations. But what we understood it to be was police admissions that he wanted.

THE COURT: I will accept that but I think that hereafter when the Court orders all admissions and all confidential copies to be turned over to the Defense for inspection, I want that followed.

MR. EDMUNDS: My objection is that this is too late. The purpose of discovery is to get it before trial so we can prepare. The Court had ordered it, and it is not my responsibility—

MR. KINOSHITA: (Interrupting) Your Honor, this is all irrelevant. He is denying everything.

THE COURT: Who is denying everything?

MR. KINOSHITA: A general denial.

THE COURT: Yes, but that doesn't have anything to do with it. If a pre-trial request is made and the Court indicates that the request should be honored, I want it done. I don't want the trial disrupted like this because of some misunderstanding—

Defense counsel renewed his motion to exclude the statements and moved alternatively for dismissal. The court denied the motions and permitted the prosecutor to continue his line of questioning. The complainant testified that the appellant said upon confronting her, "If you scream, I will kill you." She further testified that the appellant admitted burglarizing her apartment on a previous occasion, having first "jimmied" the door, and that he had burglarized several other apartments and terrorized women.

The appellant urges on appeal that the circuit court properly ordered discovery of the statements, but that, in any event, he had an affirmative right not to be misled by the state as to the existence of such statements.

We note at the outset that the circuit court had no authority to order the state to permit pretrial discovery by the appellant of the admissions in question, since the admissions were contained in a police report made by the complainant. H.R.Cr.P. Rule 17(h)[3] provides in pertinent part:

---

[3]H.R.Cr.P. Rule 17(h) is an essentially verbatim replica of 18 U.S.C. § 3500 (1970), commonly known as the Jencks Act. Although the principles articulated in the Jencks Act are not binding upon state criminal trials, United States v. Augenblick, 393 U.S. 348, 356 (1969), the federal cases construing its provisions are nonetheless instructive when we seek to address ourselves to the "gaps to be filled and ambiguities to be resolved" in our own rule. See Palermo v. United States, 360 U.S. 343, 349 (1959). Therefore, where analogy to the Jencks Act is appropriate, we have cited the relevant federal case law.

(1) *When Subject to Production*. No statement or report in the possession of the State which was made by a government witness or prospective government witness (other than the defendant) to an agent of the government shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial.

(2) *Order for Production*. After a witness called by the State has testified on direct examination, the court shall, on motion of the defendant, order the State to produce any statement (as hereinafter defined) of the witness in the possession of the State which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . .

(4) *Refusal to Produce; Consequences*. If the State elects not to comply with an order of the court under paragraph (2) . . . hereof to deliver to the defendant any such statement . . . , the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(5) *"Statement" Defined*. The term "statement," . . . in relation to any witness called by the State, means:

. . . .

(ii) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the government and recorded contemporaneously with the making of such oral statement.

Material contained in a statement of a government witness to an agent of the government which is not producible under the terms of H.R.Cr.P. Rule 17(h) cannot be required to be produced at all. Statements discoverable under H.R.Cr.P. Rule 17(h) (1) are to be used for impeachment purposes, and therefore are not to be made available to a defendant until after the government witness has testified. *See Palermo* v. *United States,* 360 U.S. 343, 349-51 (1959). "Once *producibility* is established the defendant has an absolute right to the statement, or, in the alternative, to have the testimony of the witness stricken if the Government refuses to comply, and failure to so order is reversible error." *Lewis* v. *United States,* 340 F.2d 678, 682 (8th Cir. 1965). *See State* v. *Adrian,* 51 Haw. 125, 129, 453 P.2d 221, 224 (1969). But the statement of a government witness to a government agent is not producible until the witness has taken the stand; therefore, a defendant's rights to due process and the effective assistance of counsel do not come into play until that time. *See United States* v. *Washabaugh,* 442 F.2d 1127 (9th Cir. 1971).

The admissions which the appellant sought to discover in the instant case were recorded in a "statement" of the complainant, within the meaning of H.R.Cr.P. Rule 17(h) (5) (ii). Thus, the circuit court could not properly order the state to produce the statement until after the complainant had testified on direct examination as to the material contained in it. Thereafter the appellant had a right to inspect the statements contained in the police report. As it happened, defense counsel chose not to exercise that right in conducting his cross-examination of the complainant. Rather, he requested and received permission to inspect the report during his cross-examination of the police officer who recorded it.

The fact, however, that H.R.Cr.P. Rule 17(h) barred the appellant from pretrial discovery of material contained in the complainant's police report is not dispositive of his claim that due process of law requires that he not be deliberately misled as to the existence of alleged admissions contained in the report. It should be noted that the issue does not,

as in *Brady* v. Maryland, 373 U.S. 83 (1963) and *Levin* v. *Clark*, 408 F.2d 1209 (D.C. Cir. 1967), concern the scope of the prosecutor's duty to disclose to the defendant evidence *favorable* to him, such that it might ultimately be brought to the attention of the trier of fact in a manner selected by the defendant. Rather, the issue in the instant case is the prosecutor's duty not to deceive the defendant or inhibit affirmatively his access to evidence which the prosecutor intends to present at trial himself.

We subscribe to the principle enunciated in Standard 2.8(a) of the American Bar Association Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function (Approved Draft, 1971), which declares: "It is unprofessional conduct for a prosecutor intentionally to misrepresent matters of fact or law to the court."[4] Such deliberate misrepresentation, which in fact denies a defendant a fair opportunity to prepare for trial, may constitute "such unfair, dishonest or ignoble conduct as to [deny a defendant] the due process called for by the Fourteenth Amendment." *See Burwell* v. *Teets*, 245 F.2d 154, 163 (9th Cir. 1957), *cert. denied*, 355 U.S. 896 (1957).

---

[4]The commentary to Standard 2.8(a) states:

It is fundamental that in his relations with the court, the prosecutor must be scrupulously candid and truthful in his representations in respect of any matter before the court. ABA CODE DR 1-102. This is not only a basic ethical requirement, but it is essential if he is to be effective in the performance of his role as the representative of the public in the administration of criminal justice.

The introduction to the Standards Relating to The Prosecution Function contains, at 23, the following pertinent observations:

Two sources of immediate control and discipline are available: first, trial judges can enforce appropriate standards by insisting on compliance with proper conduct of cases before them and imposing sanctions for improprieties. At the appellate level, the sanction of reversal of convictions is the ultimate penalty against prosecutors, but, short of this, appellate courts can also enunciate standards for both prosecutors and defense counsel. The second source of control and discipline, similarly neglected for a century or more, is the power of the organized bar to deal with professional misconduct of its members. . . . Until professional associations are vested with broad powers of discipline, the primary source of authority to deal with this problem rests in the courts, especially trial courts.

In the instant case, however, the circuit court ruled that the prosecutor's misrepresentations as to the admissions of the appellant were unintentional, the result of a misunderstanding or breakdown in communications. On that basis, the court declined to grant a mistrial or order the exclusion of otherwise admissible and probative testimony. We are satisfied that the court's ruling is supported by substantial evidence. It is true that prosecutor Ching was expressly directed to produce the appellant's admissions to the complainant. But neither the appellant's written discovery motion nor the court's directives to prosecutor Kinoshita is sufficiently unambiguous as to preclude Kinoshita reasonably from concluding that he was being ordered to produce any statement which the appellant may have made to the police. Therefore, we cannot say that the circuit court abused its discretion.

II. THE PSYCHIATRIC EXAMINATION

The appellant next insists that the circuit court abused its discretion in refusing to order the complainant to submit to a psychiatric examination. He argues that such an examination becomes imperative in the absence of any evidence corroborating the complainant's testimony, because in such circumstances the accused may fall victim to the groundless fantasies or vindictiveness of a pathological female.

In support of his contention, the appellant cites 3A Wigmore, Evidence § 924a (Chadbourn rev. 1970), at 737 for the proposition that: *"No judge should ever let a sex offense go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician."* [5] In addition, the appellant presented

---

[5] In support of this position, Wigmore catalogs a series of anecdotal narratives of a number of "eminent observers," dating from 1915 to 1933, which purport to be reflective of the "modern realist movement." Included is a letter, dated September 5, 1933, written by Dr. Karl A. Menninger and expressing the view that not only should "criminals and those charged with crime" be subjected to compulsory psychiatric examination, but also "some of the individuals who make criminal charges, not only of rape but also of malpractice and other personal attacks." Dr. Menninger explained the inclusion of rape complainants in terms

the testimony of an expert witness, Dr. Kosta Stojanovich, at a pretrial hearing. Dr. Stojanovich testified that during his career he had interviewed from 15 to 25 females who were in the process of filing or had filed complaints in sex offense cases, and that from 20 to 30 percent of these either admitted through therapy that they were fabricating the matter of rape or were in his opinion fabricating.[6]

In *State v. Vincent*, 51 Haw. 40, 42-43, 450 P.2d 996, 998 (1969), we agreed

> . . . with courts of other jurisdictions that a trial judge in his discretion may order a psychiatric examination of a witness on the question of credibility when a movant shows a compelling reason for such examination. [Citations omitted.]

> However, mere allegation by the appellants that the key witness . . . was fabricating his story . . . was neither sufficient nor compelling ground for such examination. To hold that the trial judge in the exercise of his discretion should have ordered a psychiatric examination . . . under the record of this case would require such examination of every witness when so requested by the opposing party . . . .

We believe that the position expressed in *Vincent* is no less applicable in the instant case. Indeed, *Ballard* v. *Superior Court of San Diego County* 64 Cal. 2d 159, 175-76, 49 Cal. Rptr. 302, 313, 410 P.2d 838, 849 (1966), the authority upon which the appellant chiefly relies, appears to be in complete accord:

> We submit . . . that a general rule requiring a psychiatric examination of complaining witnesses in every sex case

---

of the "probably universal" fantasies among women of being raped. He did not elaborate upon why he inferred the likelihood of mental illness from a charge of malpractice. 3A Wigmore, Evidence § 924a (Chadbourn rev. 1970), at 736, 740, and 744.

[6]In other words, Dr. Stojanovich testified that he had observed in his career from 3 to 8 complainants in sex cases, who either admitted to or whom he suspected of lying. Of course, no testimony was presented concerning the propensity of witnesses in general to fabricate.

or, as an alternative, in any such case that rests upon the uncorroborated testimony of the complaining witness would, in many instances, not be necessary or appropriate. Moreover, victims of sex crimes might be deterred by such an absolute requirement from disclosing such offenses.

Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a compelling reason for such an examination. [Citation omitted.]
*Accord, State* v. *Miller*, 35 Wis. 2d 454, 471-72, 151 N.W.2d 157, 165 (1967).[7]

Thus, we hold that the circuit court properly exercised its discretion in denying the appellant's motion based upon nothing more compelling than a bald allegation that the complainant may be mentally ill.[8]

---

[7]The *Ballard* court expressed a healthy skepticism as to the utility and reliability of such psychiatric testimony, at n. 10:

We do not overlook Judge Jerome Frank's warning against needlessly embarking "on an amateur's voyage on the fog-enshrouded sea of psychiatry." (*United States* v. *Flores-Rodriguez* (1956), 237 F.2d 405, 412 [concurring opinion].) A psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify issues; the testimony may be distracting, time-consuming and costly. (See generally Juviler, *Psychiatric Opinion as to Credibility of Witnesses: A Suggested Approach, supra,* 48 Cal. L. Rev. 648; McCormick on Evidence, *supra,* 100; Comment, *Psychiatric Evaluation of the Mentally Abnormal Witness, supra,* 59 Yale L.J. 1324.)

64 Cal. 2d at 174-75, 49 Cal. Rptr. at 312, 410 P.2d at 848. The court also observed aptly that a "complaining witness should not, and realistically cannot, be forced to submit to a psychiatric examination or to cooperate with a psychiatrist." 64 Cal. 2d at 177, 49 Cal. Rptr. at 313, 410 P.2d at 849.

[8]We are not faced with a situation in which the defendant proffers psychiatric testimony to the effect that the credibility of the complainant is *in fact* questionable.

### III. THE "EVIDENTIAL HARPOON"[9]

In the course of the trial, the prosecutor questioned a state witness, Detective Rivera, regarding the complainant's photographic identification of the appellant, thus giving rise to the following colloquy:

MR. KINOSHITA: Detective, I call your attention to the interview regarding the photographs. Now, can you tell us about that?

THE COURT: Not what was said. Something was done in her presence and your presence?

WITNESS: On the 26th of January, Mr. Kahinu was in police custody on—

MR. EDMUNDS: (Interrupting) Your Honor, I object—

WITNESS: (Simultaneously)—another case.

MR. EDMUNDS: (Simultaneously)—and move for a mistrial.

THE COURT: The motion is denied. Continue.

MR. EDMUNDS: And I object to any further testimony from this witness in the jury's presence.

THE COURT: That will be denied.

MR. EDMUNDS: A running objection to this line?

THE COURT: All right. Continue.

WITNESS: Mr. Kahinu was in police custody on another case—

MR. EDMUNDS: (Interrupting) Same objection, your Honor, and motion—

THE COURT: (Interrupting) Yes—anything about another case will be stricken from the record.

MR. EDMUNDS: Is the motion for mistrial in the

---

*See* Mosley v. Commonwealth, 420 S.W.2d 679 (Ky. 1967). Nor do we confront the issue, present in People v. Russel, 69 Cal. 2d 187, 70 Cal. Rptr. 210, 443 P.2d 794 (1968), of the scope of the trial court's discretion to refuse to admit psychiatric evidence relating to the mental condition of the complainant, once an examination has been ordered.

[9] *See* Gregory v. United States, 369 F.2d 185, 190 (D.C. Cir. 1966), *cert. denied,* 396 U.S. 865 (1969).

record?

THE COURT: It has been denied—on the record. Continue.

The appellant argues that the circuit court's *sua sponte* cautionary instruction to the jury was insufficient to cure Detective Rivera's reference to the separate arrest of its prejudicial impact upon the jury and that the court's refusal to grant a mistrial constituted reversible error.

Although we are unable to accept the appellant's position in the circumstances presented here, we frankly acknowledge that the deliberate and unresponsive injection by prosecution witnesses of irrelevant references to prior arrests, convictions, or imprisonment may generate insurmountable prejudice to the cause of an accused. *See Gregory* v. *United States*, 369 F.2d 185, 189-90 (D.C. Cir. 1966), *cert. denied*, 396 U.S. 865 (1969). Such wielding of the "evidential harpoon" may compel the trial court to declare a mistrial, whether it appears that the testimony was deliberately induced by the prosecutor, *see White* v. *State*, 272 N.E.2d 312, 318-20 (Ind. 1971), and *People* v. *Greenway*, 365 Mich. 547, 114 N.W.2d 188 (1962), or through the overzealousness of the police witness, *see Gregory* v. *United States, supra* at 190. Indeed, as Judge J. Skelly Wright observed in *Gregory*, an immediate cautionary instruction by the court to the jury may be insufficient to cure the prejudice. *Gregory* v. *United States, supra* at 190.[10]

But this is not always the case. As a general rule, it is for the circuit court to determine whether a situation involving the use of the "evidential harpoon" merits a mere prophy-

---

[10]The state relies upon State v. Hashimoto, 46 Haw. 183, 377 P.2d 728 (1962), for the proposition that the appellant's proper remedy, in the face of Rivera's unresponsive references, was a motion to strike, and that, in light of the court's timely and *sua sponte* cautionary instruction, the appellant is precluded from claiming reversible error. After State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971), however, the state could hardly maintain that repeated, unresponsive references by a witness to a defendant's prior convictions could never provide a basis for a mistrial. We believe that references to prior arrests may, in particular circumstances, be as prejudicial as references to prior convictions.

lactic cautionary instruction or the radical surgery of declaring a mistrial. *See Commonwealth v. Gibson,* 357 Mass. 45, 255 N.E.2d 742 (1970). We are satisfied that the instant case merits application of the rule stated in *Tucker* v. *United States,* 431 F.2d 1292, 1293 (9th Cir. 1970):

> . . . [T]he reception of evidence pertaining to prior convictions [or, as in the instant case, prior arrests], . . . may, under the circumstances of a particular case, be harmless beyond a reasonable doubt, applying the principle announced in Chapman v. California, 386 U.S. 18 . . . (1967). Under *Chapman,* an error of constitutional proportions can be disregarded as harmless if the prosecution proves beyond a reasonable doubt that the error "did not contribute to the verdict obtained." 386 U.S. at 24 . . . .

We hold that, beyond a reasonable doubt, the testimony of Detective Rivera "did not contribute to the verdict obtained."

The appellant's other specifications of error are without merit.

Affirmed.

*John S. Edmunds (Mattoch, Edmunds & Kemper* of counsel) for defendant-appellant.

*Burt L. Snyder (Barry Chung,* Prosecuting Attorney with him on the brief) for plaintiff-appellee.