STATE OF HAWAI`I, Plaintiff-Appellee,
v.
JOSEPH D. GRISSOM, Defendant-Appellant
No. 28014
Intermediate Court of Appeals of Hawaii.
January 31, 2008
On the briefs:
Zachary Summerfield, for Defendant-Appellant
Richard K. Minatoya, Deputy Prosecuting Attorney County of Maui, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, Chief Judge, NAKAMURA, and FUJISE, JJ.
Defendant-Appellant Joseph Grissom (Grissom) appeals from the Judgment filed on May 31, 2006, in the Circuit Court of the Second Circuit (circuit court).[1] Grissom was charged by indictment with first degree burglary (Count 1) and third degree theft (Count 2). Following a jury trial, Grissom was found guilty as charged of first degree burglary, in violation of Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993),[2] and the included offense of fourth degree theft, in violation of HRS § 708-833(1) (1993).[3] The circuit court sentenced Grissom to concurrent terms of imprisonment of ten years for the first degree burglary, subject to a mandatory minimum term of 40 months based on his status as a repeat offender, and thirty days for the fourth degree theft.
On appeal, Grissom argues that: 1) the circuit court abused its discretion in denying Grissom's motion for a mistrial following a detective's testimony that almost ninety-nine percent of the photographs included in photographic line-ups come from arrest booking pictures; and 2) his trial counsel provided ineffective assistance in eliciting Grissom's statement to a police officer which had previously been ordered suppressed and which was adverse to Grissom's defense at trial.
For the reasons discussed below, we affirm the circuit court's Judgment without prejudice to Grissom's raising his ineffective assistance of counsel claim in a subsequent Hawai`i Rules of Penal Procedure (HRPP) Rule 40 proceeding.

I.
Grissom was accused of stealing a guitar from the ground-floor apartment of Benjamin Little, who was the resident manager of a Kihei condominium. Little was on the condominium grounds when he spotted Grissom walking along the pool carrying Little's guitar. Little confronted Grissom and retrieved his guitar. Little testified that Grissom explained that someone named "Sam" had told Grissom to get the guitar. Little said, "Well, let's  let's see if we can go find Sam[,]" to which Grissom responded, "You're going to have to make me." Grissom departed as Little went to call the police.
Little's neighbors, Creighton and Linda Mueller, testified that on the day in question, they saw Grissom open a gate that said "PRIVATE TRESPASSERS WILL BE PROSECUTED" and walk down a path leading to Little's apartment. A short time later, they saw Grissom return on the path, carrying a guitar. Although both Creighton and Linda Mueller made an in-court identification of Grissom as the individual they had seen on the path, only Creighton Mueller had been able to pick Grissom's photograph out of a photographic line-up presented to them a day after the incident.
Little reviewed the condominium's video surveillance system, d he showed a portion of the video recording to Maui Police Department Officer William Hankins. Officer Hankins recognized the man shown in the video as Grissom, whom Officer Hankins knew from "the street," because of Grissom's distinctive sideburns and tattoos. The day after the incident, Officer Hankins found Grissom sitting in a car near Little's condominium. Little was called to the scene and identified Grissom as the man who had been carrying Little's guitar and the person depicted in the surveillance video. Grissom was then arrested.
During Officer Hankins's encounter with Grissom and prior to Grissom receiving any Miranda warnings, Grissom stated, "I didn't steal anything. Some guy on the beach told me to go into the last apartment at the end of the walkway and get his guitar." Prior to trial, Grissom moved to suppress his statement to Officer Hankins on the ground the it was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The circuit court granted Grissom's motion to suppress the statement.
Grissom's counsel stated in his opening statement that someone named Sam told Grissom, "Let's go get my guitar," and that Sam then retrieved a guitar and handed it to Grissom, who was waiting by the pool area. At trial, Officer Hankins was questioned by the prosecution and defense and did not mention the suppressed statement. The circuit court then considered questions from the jury, one of which was whether Grissom had told Officer Hankins that Grissom was sent to the apartment by Sam to retrieve the guitar. Grissom's counsel was reminded that he had moved to suppress Grissom's statement to Officer Hankins. Grissom's counsel, however, stated that he was not objecting to the juror's question. In the absence of any objection, the circuit court allowed the question:
The Court: I think there is problems with the next question [from the jury], however. Question 11A is, did Mr. Grissom tell you he was sent to the apartment by Sam to retrieve the guitar? And question 11B is, if so, was any attempt made to locate this person? I don't think we can ask that question.
[Prosecutor 1]: You're the one who filed a motion to suppress.
[Defense Counsel]: I'm not objecting.
[Prosecutor 2]: He's going to object to it. That is the whole statement.
The Court: There is a discussion with Mr. Grissom about Sam? [Prosecutor 2]: That's what you suppressed.
The Court: Well, Counsel, if we suppressed the statement, and it's suppressed, I don't understand how it can come out at trial.
[Defense Counsel]: It's difficult to come out at this moment.
[Prosecutor 2]: It's a tactical decision.
The Court: Are you objecting to that?
[Prosecutor 1]: TI t going to object
[Prosecutor 2]: No.
The Court: And you're not objecting to it?
[Defense Counsel]: No.
The Court: All right. The Court  there being no objection, the Court will permit 11A and 11B.
When the circuit court asked Officer Hankins whether Grissom said he was sent to the apartment by Sam to retrieve the guitar, Officer Hankins answered "No." Grissom's counsel then followed up and elicited the previously suppressed statement from Officer Hankins:
The Court: The next question is, did Mr. Grissom tell you he was sent to the apartment by Sam to retrieve the guitar?
Officer Hankins: No.
[Defense Counsel]: Oh.
The Court: All right. Was there any follow up questions from Counsel?
[Defense Counsel]: Yes, Your Honor.
....
[Defense Counsel]: Officer, did Mr. Grissom say to you some guy on the beach told me to go to the apartment?
Officer Hankins: When I had contact with Mr. Grissom 
[Defense Counsel]: I'm sorry, Mr. Grissom.
Officer Hankins: When I had contact with Mr. Grissom the next day, when I met him in front of the Manu Kai, he told me some guy on the beach told him to go to the last apartment down at the end, go inside and take the guitar. He never mentioned anything about a guy named Sam.
[Defense Counsel]: I have nothing further.
Grissom testified that on the day in question, as he was headed toward the beach, Sam "came out of a condo" and handed Grissom a guitar with instruction to take the guitar to the beach where Sam would meet him. Grissom said he was confronted by Little who claimed ownership of the guitar, at which point Grissom "recognized what was going on" and relinquished the guitar. Grissom denied going into Little's apartment or stealing the guitar. Grissom said that Sam was about the same size as Grissom and that they looked alike. Grissom did not know where Sam lived and had not seen Sam since the day of the incident.

II.
After a review of the record and the briefs submitted by the parties, we resolve the arguments raised by Grissom as follows:
1. We conclude that the circuit court did not abuse its discretion in denying Grissom's motion for a mistrial. During trial, Detective David Medeiros testified about a photographic line-up he had shown to Benjamin Little, Creighton Mueller, and Linda Mueller. Benjamin Little and Creighton Mueller picked Grissom's photograph out of the photographic lineup. On cross-examination, Grissom's counsel elicited testimony from Detective Medeiros that almost ninety-nine percent of the photographs included in photographic line-ups come from arrest booking photographs:
[Defense Counsel]: I have a related question to these, and I don't mean any disrespect, were any of these photos digitally modified to make them look the same skin tone or make them look more similar?
Detective Medeiros: This particular line-up?
[Defense Counsel]: Yes.
Detective Medeiros: It's all productions of Polaroids. None these pictures are digital.
[Defense Counsel]: I understand. So you took these pictures [line-up photos] right off of Polaroids?
Detective Medeiros: I requested  make a work request to our photo lab for reproduction. Majority of our photographs come from arrest booking pictures. So these are reproductions enlarged from Polaroids.
[Defense Counsel]: Now, are there other sources for the photos?
Detective Medeiros: Very rare, the majority is arrest booking photos.
[Defense Counsel]: Not all of them?
Detective Medeiros: Almost 99 percent.
In response to Detective Medeiros's testimony, the circuit court gave the following cautionary instruction:
The evidence has referred to a photograph of the defendant used by the police on August 31st, 2005. The government has access to photographs of people from different sources and for different purposes. The fact that the police, for line-up purposes, utilized the photograph of the defendant after his arrest does not mean that he had committed any crimes prior to his arrest in this case.
(Emphasis added.)
Grissom argues that the circuit court erred in denying his motion for a mistrial because Detective Medeiros's testimony was unduly prejudicial and violated his right to fair trial in that the detective's testimony indicated that Grissom had previously been arrested in circumstances unrelated to this case. We disagree.
Detective Medeiros did not testify that Grissom's photograph had come from an arrest that was unrelated to this case. Indeed, in light of the evidence presented and the court's cautionary instruction, the jury could reasonably have inferred that Grissom's photograph came from the booking photograph taken after his arrest in this case.
It was within the circuit court's discretion to decide that Officer Medeiros's testimony merited a prophylactic instruction rather than "the radical surgery of declaring a mistrial." State v. Kahinu, 53 Haw. 536, 550, 498 P.2d 635, 644 (1972). Given the court's cautionary instruction and the strong evidence supporting Grissom's guilt, we cannot say that the circuit court abused its discretion in denying Grissom's motion for mistrial. See State v. Hauge, 103 Hawai`i 38, 59, 79 P.3d 131, 152 (2003) (stating that a jury is presumed to follow the trial court's instruction); State v. Loa, 83 Hawai`i 335, 353, 926 P.2d 1258, 1276 (1996) (upholding the denial of a mistrial in light of the trial court's immediate cautionary instruction and the strong evidence of the defendant's guilt); State v. Dias, 100 Hawai'i 210, 224, 58 P.3d 1257, 1271 (2002). Moreover, under the circumstances of this case, we conclude that the challenged testimony of Officer Medeiros did not contribute to Grissom's convictions and was harmless beyond a reasonable doubt. Kahinu, 53 Haw. at 550, 498 P.2d at 644.
2. Grissom claims that his trial counsel's act of deliberately eliciting Grissom's previously suppressed statement to Officer Hankins undermined Grissom's defense and constituted ineffective assistance of counsel. We deny Grissom's ineffective assistance of counsel claim without prejudice to Grissom's raising it in a subsequent HRPP Rule 40 proceeding. The record is insufficient for us to determine whether there has been ineffective assistance of counsel. See State v. Silva, 75 Haw. 419, 439, 864 P.2d 583, 592-93 (1993). In particular, we do not have the benefit of trial counsel's explanation of why he chose to elicit the suppressed statement. Nor are we privy to any discussions that may have taken place between trial counsel and Grissom that may have had a bearing on counsel's decision. We therefore conclude that further development of the record is necessary at an HRPP Rule 40 proceeding in order to determine whether Grissom can meet his burden of establishing: "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998).

III.
We affirm the circuit court's May 31, 2006, Judgment without prejudice to Grissom's raising his ineffective assistance of counsel claim in a subsequent HRPP Rule 40 proceeding.
NOTES
[1] The Honorable Joel E. August presided.
[2] Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993) provides:

(1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
....
(c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.
[3] HRS § 708-833 (1993) provides, in relevant part:

(1) A person commits the offense of theft in the fourth degree if the person commits theft of property or services of any value not in excess of $100.