**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000053
14-OCT-2022
07:44 AM
Dkt. 69 SO**

NO. CAAP-20-0000053

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
RYAN BENEDICTO, also known as Ryan James Benedicto,
Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-19-0000560)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Wadsworth, JJ.)

Defendant-Appellant Ryan Benedicto, also known as Ryan James Benedicto (**Benedicto**), appeals from the January 28, 2020 Judgment of Conviction and Probation Sentence; Notice of Entry (**Judgment**), entered in the Circuit Court of the First Circuit (**Circuit Court**).[1] Following a jury trial, Benedicto was convicted of: (1) Forgery in the Second Degree (**Forgery Two**), in violation of Hawaii Revised Statutes (**HRS**) § 708-852 (2014);[2] and

---

[1] The Honorable Todd W. Eddins presided.

[2] At the time of the alleged offense, HRS § 708-852 provided, in relevant part:

(1) A person commits the offense of forgery in the second degree if, with intent to defraud, the person falsely makes, completes, endorses, or alters a written instrument, or utters a forged instrument, or fraudulently encodes the magnetic ink character recognition numbers, which is or purports to be, or which is calculated to become or to represent if completed, a deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.

(2) Attempted Theft in the Second Degree (**Attempted Theft Two**), in violation of HRS §§ 705-500 (2014)[3/] and 708-831(1)(b) (Supp. 2019).[4/]

On appeal, Benedicto contends that: (1) the deputy prosecuting attorney (**DPA**) committed prosecutorial misconduct by adducing evidence at trial of Benedicto's prior conviction and prison sentence; (2) the Circuit Court erred in denying Benedicto's motion for a mistrial; and (3) the evidence was insufficient to support the convictions for Forgery Two and Attempted Theft Two.

---

[3/]    HRS § 705-500 states, in relevant part:

    (1) A person is guilty of an attempt to commit a crime if the person:

    . . . .

    (b)    Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

    . . . .

    (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

[4/]    At the time of the alleged offense, HRS § 708-831(1)(b) provided:

    (1) A person commits the offense of theft in the second degree if the person commits theft:

    . . .

    (b)    Of property or services the value of which exceeds $750[.]

HRS §708-830 (2014) states, in relevant part:

    A person commits theft if the person does any of the following:

    (1)    Obtains or exerts unauthorized control over property. A person obtains or exerts unauthorized control over the property of another with intent to deprive the other of the property.

    (2)    Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

2

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Benedicto's contentions as follows and affirm.

(1) Benedicto contends that the DPA committed misconduct by adducing evidence at trial that Benedicto "went to prison for a domestic matter[,]" after the State indicated during a motion-in-limine hearing that it would not elicit such evidence.

"The term 'prosecutorial misconduct' is a legal term of art that refers to *any* improper action committed by a prosecutor, however harmless or unintentional." State v. Maluia, 107 Hawaiʻi 20, 25, 108 P.3d 974, 979 (2005). "Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard." State v. Riveira, 149 Hawaiʻi 427, 431, 494 P.3d 1160, 1164 (2021) (citing State v. Klinge, 92 Hawaiʻi 577, 584, 994 P.2d 509, 516 (2000)). "[A] reviewing court will vacate a conviction if there is a reasonable possibility that the conduct might have affected the trial's outcome." Id. (citing State v. Senteno, 69 Haw. 363, 366, 742 P.2d 369, 372 (1987)). "Factors considered are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." State v. Maluia, 107 Hawaiʻi 20, 24, 108 P.3d 974, 978 (2005) (quoting State v. Sawyer, 88 Hawaiʻi 325, 329 n.6, 966 P.2d 637, 641 n.6 (1998)).

Here, Benedicto testified at trial. During the DPA's cross-examination, the following exchange occurred:

> Q [by DPA]. Let's talk about what you did before the accident. So you said you were at Kalaeloa Airport?
>
> A. I was a -- a fuel man, you could say.
>
> Q. Fuel man?
>
> A. I fueled aircrafts, helicoptors, airplanes.
>
> Q. Okay. How did you -- how did you end up getting into that?
>
> A. My friend, we both danced hula at the age of 11 and ten, we used to dance hula at Hale Koa Hotel. He was a good friend and he owned the airport. And <u>when I got</u>

> released in 2011 from another charge, he hired me for the airport.
>
> Q. Okay. When you say released, that means out of prison?
>
> A. Yes, it was domestic kind of stuff.
>
> THE COURT: All right. The jury is going to disregard that. The jury is not to consider anything relating to any prior criminality purportedly committed by Mr. Benedicto. It has nothing to do with the particular case, you are to disregard that.

(Emphases added.)

Benedicto contends that his testimony related to the domestic matter was adduced contrary to the DPA's statement at a motion-in-limine hearing. Prior to trial, on November 14, 2019, Benedicto filed a motion in limine seeking to exclude three categories of evidence at trial, including "[t]estimonial or documentary evidence relating to [Benedicto's] criminal arrest and/or conviction record and any other 'bad acts[.]'" On appeal, the State concedes that during a November 15, 2019 hearing on the motion, "the State indicated that it had no intention to elicit that type of information [relating to other criminal acts] during trial."[5] It does not appear that the Circuit Court ruled on this aspect of Benedicto's motion.

We apply the three factors identified above to the trial record to determine whether the asserted prosecutorial misconduct "rises to the level of reversible error." State v. Austin, 143 Hawaiʻi 18, 40, 422 P.3d 18, 40 (2018).

The first factor requires consideration of the nature of the misconduct. Here, the DPA's question – "When you say released, that means out of prison?" – essentially required

---

[5] Benedicto's motion in limine sought to exclude three categories of evidence, labeled (a), (b), and (c). The (a) category comprised evidence "relating to [Benedicto's] criminal arrest and/or conviction record and any other 'bad acts[.]'" During the November 15, 2019 hearing, the Circuit Court referred to this category of evidence as "the (a) matter" in the following exchange:

> THE COURT: Okay. You know, as far as the 404(b) in the (a) matter, Mr. [DPA], is there 404(b) types of matters that you were intending to elicit in the trial?
>
> [DPA]: Not -- no, Your Honor, aside from the (b) and (c) [categories] that's addressed in defense's motion in limine, which I believe is part of the elements.

4

Benedicto to confirm or deny that he had served prison time. The question was thus contrary to the State's acknowledgment during the motion-in-limine hearing that it did not intend to elicit "404(b) types of matters." Under these circumstances, the question was improper. See Maluia, 107 Hawaiʻi at 25, 108 P.3d at 979. However, the Circuit Court immediately gave a curative instruction and the State made no other reference to Benedicto's prior criminal conviction or sentence, *i.e.*, there was no repeated misconduct. Cf. State v. Pasene, 144 Hawaiʻi 339, 371, 439 P.3d 864, 896 (2019) (vacating and remanding where the prosecution repeatedly referred to evidence that had been excluded by the court, and the court's efforts to eliminate the cumulative prejudicial effect of the misconduct were insufficient). Moreover, the DPA did not elicit testimony regarding the nature of Benedicto's prior conviction. As the Circuit Court recognized in denying Benedicto's subsequent motion for a mistrial (see infra), "this [prior] matter was injected by Mr. Benedicto."[6] Thus, while the DPA's question was improper, in these circumstances the misconduct was not egregious. See Maluia, 107 Hawaiʻi at 27, 108 P.3d at 981 (although asking the defendant to comment on the veracity of other witnesses was improper, "the conduct was less egregious than that presented in those cases where we vacated the defendants' convictions and remanded for new trials.").

Having concluded that the DPA's question was improper, we examine the second factor regarding "the promptness or lack of a curative instruction." See Austin, 143 Hawaiʻi at 40, 422 P.3d at 40. Here, the Circuit Court promptly gave a curative instruction to the jury, which was specifically told to disregard "anything relating to any prior criminality purportedly committed by Mr. Benedicto[,]" because "[i]t has nothing to do with the particular case . . . ." The jury is presumed to have complied with the Circuit Court's instruction. See State v. Underwood,

---

[6] During the hearing on the motion for mistrial, the DPA explained that he did not expect Benedicto to testify that he "got released in 2011 from another charge" when the DPA asked about the Kalaeloa Airport job. The DPA further stated, "I didn't intend on any other questions, but just to clarify what 'get out' meant."

142 Hawaiʻi 317, 327, 418 P.3d 658, 668 (2018) (when a trial court promptly addresses the impropriety, the improper remarks are generally considered cured by the court's instruction to the jury because "it is presumed that the jury abided by the court's admonition to disregard the statement." (quoting State v. Rogan, 91 Hawaiʻi 405, 415, 984 P.2d 1231, 1241 (1999))).

The third factor requires that we consider the strength or weakness of the evidence against the defendant. See Austin, 143 Hawaiʻi at 40, 422 P.3d at 40. The evidence against Benedicto in support of the Forgery Two and Attempted Theft Two charges was strong. Specifically, the evidence presented at trial included the following:

- Two Bank of Hawaii (**BOH**) employees, Troy Chong (**Chong**) and Christopher Buto (**Buto**), testified that on March 30, 2019, Benedicto presented and attempted to cash a $1,436.21 payroll check, which they later determined to be fraudulent, at the BOH branch located in the Kapahulu Safeway. The name of the payor was "Moana Enterprise Inc" and the name of the payee was Benedicto.

- Chong informed Benedicto that there was a $500 check cashing limit for noncustomers and gave him the option of opening an account. Benedicto agreed, telling Chong that he was "like an engineer for a construction company." When Chong proceeded to verify the check, he noticed that the signature on the check was "very off" from the signature on file, and the nature of the business, Moana Enterprise, was massage therapy, which was inconsistent with Benedicto's reported occupation as an engineer for a construction company. Chong related these discrepancies to his branch manager, Buto.

- Buto testified that the check was not consistent with the stock of checks issued for the Moana Enterprise account, was not in sequence with check numbers used, and was not consistent with the signature card on file. When Buto interacted with Benedicto, Benedicto appeared

"agitated."  After Buto informed Benedicto that the check appeared fraudulent, Benedicto first argued that the check was good and then "fled" (or "[j]ust left") the bank, leaving behind the check and his identification.  When Moana Zhang (**Zhang**), the owner of Moana Enterprise, was shown the check at trial, she testified that she did not recognize it, and the signature on the check was not hers.

- Another BOH employee, Anastasia Kikiloi (**Kikiloi**), testified that on April 9, 2019, Benedicto entered the BOH Keeaumoku branch and attempted to activate a debit card he had received in the mail.  He showed Kikiloi a blurry picture of his identification on his phone, and she could not locate the account.  After researching the matter, Kikiloi's supervisor, branch manager Jensine Manuel (**Manuel**), noticed there was no account and that Benedicto had initially tried to open an account at the BOH branch in the Kapahulu Safeway.  Manuel contacted Buto, who explained that they suspected fraudulent activity.  Manuel then contacted Zhang, who confirmed the check was fraudulent and that she had closed her account.  Benedicto tried to "rush" Manuel and Kikiloi, saying he needed to leave to pick up his kids, which was "kind of a red flag."  Manuel called the police, and Benedicto was arrested.

- Benedicto testified that from 2014 to 2018, while "waiting for disability" due to an injury, he worked "on the side" in game rooms.  In 2018, a game room "high roller" named AJ hired Benedicto to haul items to the dump.  AJ would pay him $50 a load in cash "under the table."  According to Benedicto, AJ said he wanted to put Benedicto "on payroll for tax purposes," and Benedicto received his first payroll check on March 30, 2019.[7]  Benedicto testified that after knowing AJ for four years and working for him for several months,

---

[7]    The check Benedicto presented was dated March 15, 2019.

Benedicto did not know AJ's last name and did not know the name of his business. After the bank refused to cash the check, Benedicto went back to AJ, who paid Benedicto in cash and said that he would "take care of it." No other witness corroborated Benedicto's testimony.

In short, there was strong evidence to support the jury's verdict that Benedicto committed Forgery Two and Attempted Theft One, the elements of which are further discussed below.

Evaluating the three relevant factors, and considering the record as a whole, we conclude there is no reasonable possibility that Benedicto's testimony that he had been released from prison for "domestic kind of stuff" may have contributed to his convictions. Accordingly, we hold that the asserted prosecutorial misconduct was harmless beyond a reasonable doubt.

(2) Benedicto next contends that the Circuit Court erred in denying his motion for a mistrial, which was based on the same alleged misconduct, *i.e.*, the DPA having adduced evidence at trial of Benedicto's prior criminal record. Benedicto argues that the misconduct "cast [him] as a man of bad character," which deprived him of his right to a fair trial.

"The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion." State v. Dequair, 139 Hawai'i 117, 125, 348 P.3d 893, 901 (2016) (citing State v. Loa, 83 Hawai'i 335, 349, 926 P.2d 1258, 1272 (1996)). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Id. (citing State v. Ganal, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996)).

As a general rule, it is within the discretion of the trial court to determine whether the injection of irrelevant references to prior arrests, convictions, or imprisonment warrants "a mere prophylactic cautionary instruction or the radical surgery of declaring a mistrial." Loa, 83 Hawai'i at 353, 926 P.2d at 1276 (quoting State v. Kahinu, 53 Haw. 536, 549, 498 P.2d 635, 644 (1972)). "The reception of evidence pertaining

8

to prior convictions or imprisonment may, under the circumstances of a particular case, be harmless beyond a reasonable doubt . . . ." Id. (brackets and original ellipsis omitted) (quoting Kahinu, 53 Haw. at 549, 498 P.2d at 644).

Here, in denying Benedicto's motion for a mistrial, the Circuit Court explained:

> Well, this matter was injected by Mr. Benedicto. . . . [T]his initial comment by Mr. Benedicto wasn't prompted by anything except his own, let's say, candor. . . .
>
> After [the DPA] followed up with a question, I basically came in and gave a curative instruction and requested that the jury disregard any matter with respect to Mr. Benedicto being in prison for a domestic violence offense. . . . I expect the jury will follow that instruction, they will not consider that in any way in deciding whether the elements or not have been proved.
>
> I don't see it as insurmountable to the defense at all, I see any possible prejudice cured by the instruction. The motion is denied.

For the reasons discussed above, we have concluded that in the circumstances of this case, the asserted prosecutorial misconduct was harmless beyond a reasonable doubt. Accordingly, we further conclude that the Circuit Court, having given an immediate curative instruction to the jury, did not abuse its discretion in denying Benedicto's motion for a mistrial based on that misconduct.

(3) Benedicto also contends that there was no substantial evidence to support his convictions "where the credible evidence established that he did not act with the requisite intent to commit [Forgery Two] and [Attempted Theft Two]."

We review the sufficiency of the evidence to support a conviction as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution . . .; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Williams, 146 Hawaiʻi 62, 76, 456 P.3d 135, 149 (2020) (quoting State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998)). "Substantial evidence . . . is credible evidence which

9

is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." State v. Bowman, 137 Hawaiʻi 398, 405, 375 P.3d 177, 184 (2016) (quoting State v. Grace, 107 Hawaiʻi 133, 139, 111 P.3d 28, 34 (App. 2005)).

In order to convict Benedicto of Forgery Two, the State was required to prove beyond a reasonable doubt that (1) Benedicto (2) with intent to defraud (3) falsely made, completed, endorsed, or altered a written instrument, or uttered[8] a forged instrument which was or purported to be, or which was calculated to become or to represent if completed, a commercial instrument or other instrument which did or might evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status. See HRS § 708-852(1). "Intent to defraud" means: "(1) [a]n intent to use deception to injure another's interest which has value; or (2) [k]nowledge by the defendant that the defendant is facilitating an injury to another's interest which has value." HRS § 708-800 (2014).

In order to convict Benedicto of Attempted Theft Two, the State was required to prove beyond a reasonable doubt that (1) Benedicto (2) intentionally (3) engaged in conduct which, under the circumstances as he believed them to be, was a substantial step in a course of conduct intended by Benedicto to culminate in his commission of Theft Two, *i.e.*, the theft of property or services exceeding the value of $750. See HRS §§ 705-500, 708-831(1)(b). "A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct." HRS § 702-206(1)(a) (2014).

Here, Benedicto disputes the sufficiency of the evidence supporting the jury's conclusion that he acted with the requisite intent to commit the charged offenses.

---

[8] "'Utter,' in relation to a forged instrument, means to offer, whether accepted or not, a forged instrument with representation by acts or words, oral or in writing, that the instrument is genuine." HRS § 708-850.

> We have consistently held that since intent can rarely be proved by direct evidence, proof of circumstantial evidence and reasonable inferences arising from circumstances surrounding the act is sufficient to establish the requisite intent. Thus, the mind of an alleged offender may be read from his acts, conduct, and inferences fairly drawn from all of the circumstances.

State v. Calaycay, 145 Hawaiʻi 186, 200, 449 P.3d 1184, 1198 (2019) (quoting State v. Kiese, 126 Hawaiʻi 494, 502-03, 273 P.3d 1180, 1188-89 (2012)).

We conclude that substantial evidence supports the state-of-mind requirements for Forgery Two and Attempted Theft Two. In finding Benedicto guilty of Forgery Two, the jury could reasonably have inferred his intent to defraud from the following circumstances surrounding Benedicto's presentment of the check to BOH employees, as supported by the check itself and the witness testimony: (1) BOH employees determined that the check was fraudulent; (2) Benedicto said he worked for a construction company, but the check was drawn on the account of a massage therapy business; (3) Benedicto told Chong that he was an engineer, but he testified at trial that he hauled rubbish for a game room "high roller"; (4) Benedicto testified that after knowing AJ for four years and working for him for several months, Benedicto did not know AJ's last name and did not know the name of his business; (5) after Buto told Benedicto that the check appeared to be fraudulent, Benedicto "fled" the bank, leaving his identification; (6) Benedicto was then paid in cash by AJ, but returned to another BOH branch ten days later to activate a debit card, presumably to gain access to any funds in the linked account; (7) Benedicto tried to "rush" Manuel and Kikiloi, saying he needed to leave to pick up his kids, which was "kind of a red flag." In finding Benedicto guilty of Attempted Theft Two, the jury could reasonably have inferred he acted with the requisite intent to commit that offense based on the evidence of events at the BOH branch in the Kapahulu Safeway, including that Benedicto attempted to cash a check in the amount of $1,436.21.

To the extent that Benedicto challenges the credibility of the bank witnesses, "[i]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of

11

the trier of fact."  <u>State v. Pomroy</u>, 132 Hawaiʻi 85, 95, 319 P.3d 1093, 1103 (2014).  Viewing the evidence in the strongest light for the prosecution, we conclude that substantial evidence supports the reasonable inference that Benedicto acted with the required states of mind to commit Forgery Two and Attempted Theft Two.  Thus, the evidence was sufficient to support Benedicto's convictions.

For these reasons, the January 28, 2020 Judgment of Conviction and Probation Sentence; Notice of Entry, entered in the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, October 14, 2022.


On the briefs:
                                    /s/ Lisa M. Ginoza
Harrison L. Kiehm                   Chief Judge
for Defendant-Appellant.

Sonja P. McCullen,                  /s/ Katherine G. Leonard
Deputy Prosecuting Attorney,        Associate Judge
City & County of Honolulu,
for Plaintiff-Appellee.
                                    /s/ Clyde J. Wadsworth
                                    Associate Judge