**STATE OF HAWAII**, Plaintiff–Appellee, v. **CATHERINE SAMUEL**, Defendant–Appellant

NO. 15454

(CR. NO. 90–0747)

OCTOBER 22, 1992

LUM, C.J., MOON, KLEIN, LEVINSON, JJ.,
AND RETIRED JUSTICE HAYASHI,
ASSIGNED BY REASON OF VACANCY

## OPINION OF THE COURT BY KLEIN, J.

Following a jury trial, Defendant–Appellant Catherine Samuel (Appellant) was convicted of murder in the first degree under Hawaii Revised Statutes (HRS) § 707–701 (Supp. 1991) for the fatal stabbing of Agnes Spear (Agnes) at the Women's Community Correctional Center (WCCC). On June 7, 1991, Appellant was sentenced to life in prison without the possibility of parole. This appeal followed.

### I.

Appellant and Agnes were lovers for two years while they were inmates at the WCCC. Their relationship terminated after Agnes was released from incarceration. In 1989, Agnes returned to prison and Appellant attempted to renew the relationship, but Agnes refused.

Kristina Kellick, Appellant's former roommate, testified that Appellant appeared to bear animosity towards anyone that was close to Agnes. Bernadette Canne, another inmate, testified that Appellant frequently said that if she could not have Agnes, no one could. Beverly

Gonzales (Beverly), Agnes' new girlfriend, also testified that, several weeks before the stabbing, Appellant told her not to get too comfortable with Agnes, because Appellant was married to Agnes.

On December 30, 1989, the day before the stabbing, Appellant asked Agnes to spend the evening with her on New Year's Eve. Agnes refused and Appellant replied, "That's okay because you and I will never speak to each other again."

Steven Nishimura (Nishimura), the WCCC cook, testified that at 6 p.m. on December 31, 1989, Appellant asked for a deboning knife which she used to cut the meat for the evening meal. Nishimura had worked with Appellant approximately ten to twenty times prior to December 31, 1989. However, he had never seen her use a deboning knife to cut meat because the meat they used had no bones. Although Appellant usually returned a knife when she was done, on this occasion Nishimura had to ask for its return. Lora Wong (Wong), an Adult Correctional Officer, testified that Appellant approached her at 10:30 p.m. and asked for a deboning knife because Appellant was cooking food for the guards. After the food was prepared, Appellant came out of the kitchen and told Wong that she would deliver the food to the interim building.

Meanwhile, Agnes, Beverly, and some other inmates were watching videos in the program area which was located in the interim building. Appellant walked into the program area, slammed the tray on the guard's desk, and walked "relatively fast" towards Agnes and Beverly who were seated next to each other. Appellant then moved Beverly aside and stabbed Agnes with the deboning knife.

Prior to trial, the defense obtained a mental examination for Appellant. A three member evaluation panel

(panel)[1] determined Appellant's fitness to proceed to trial. After examining Appellant, the panel found her fit to proceed.

At trial, the State indicated that it would prove that Appellant stabbed Agnes because she refused to renew her relationship with Appellant. The defense admitted that Appellant committed the *actus reus*, but argued that she was not guilty of first degree murder due to a mental condition and emotional disturbance which caused her to lose control at the time of the incident.

The defense called Creighton Mattoon as one of its expert witnesses. He testified that Appellant lacked substantial "volitional control" at the time of the stabbing, because she was experiencing an emotional disturbance or extreme stress.

On behalf of the State, Dr. Harold Hall testified that, at the time of the incident, Appellant was not influenced by an extreme mental or emotional disturbance. Dr. Hall also concluded that at the time of the stabbing Appellant had "considerable to substantial" self–control.

Dr. Edward Furukawa, a defense witness, testified that neither Appellant's cognitive nor volitional control was substantially impaired at the time of the offense. He went on to say that Appellant must have experienced an insubstantial lack of volitional control at the time of the incident.

We now address the six errors cited by Appellant.

---

[1] The panel consisted of Creighton Mattoon, Dr. Edward Furukawa, and Dr. Harold Hall. Creighton Mattoon holds a master's degree in clinical psychology. Dr. Edward Furukawa is a physician and surgeon who specializes in the practice of psychiatry. Dr. Harold Hall is a forensic psychologist who holds a Doctor of Philosophy Degree in clinical psychology.

## II.

### A. Prior bad acts

At the motion *in limine* hearing, defense counsel requested that evidence of certain prior bad acts be excluded on the basis of relevance. The following acts were specifically mentioned: 1) charges that Appellant fought with other inmates; and 2) an allegation that Appellant had committed, but was not charged with, the same offense in a mainland prison.

The State responded that it was entitled to offer the evidence pursuant to Hawaii Rules of Evidence (HRE) 705 during the cross–examination of an expert. The defense acknowledged that all the doctors were provided with police reports regarding the prior offenses. Nevertheless, the defense argued that it would be unfair for the State to elicit otherwise irrelevant and prejudicial evidence simply by supplying the police reports to the evaluation panel. The court agreed with the State that on cross–examination an expert would be required to disclose any facts upon which he based his opinion.

Defense counsel stated that he would call only Creighton Mattoon (Mattoon) as his expert witness, and that Mattoon would be instructed to limit his evaluation to the facts of this case. Both counsel agreed that if Mattoon based his opinion on facts other than the actual incident, then such facts could be disclosed on cross–examination.

On cross–examination, Mattoon revealed that he had based his conclusions in part on Appellant's history of shoplifting, an altercation which took place in Kauai after the stabbing, and other reports of fighting within the institutional setting. Defense counsel did not object to Mattoon's testimony. Appellant contends that this

testimony violated the pre–trial *in limine* ruling and prejudiced the jury against her.

However, the record indicates that on Mattoon's direct examination, he testified as follows: "I found impulsivity. There are reports, previous reports that mention impulsivity on the defendant's part, not necessarily in relation to this particular conduct." Mattoon utilized the evidence of Appellant's shoplifting and other altercations to form his opinion that Appellant lacked the ability to control herself at the time of the stabbing due to a borderline personality disorder.

Appellant's attorney failed to preserve this alleged "error" by not objecting to it at trial. The general rule is that evidence to which no objection has been made may properly be considered by the trier of fact and its admission will not constitute grounds for reversal. *State v. Naeole*, 62 Haw. 563, 570–71, 617 P.2d 820, 826 (1980) (citation omitted). Therefore, we decline to address this alleged "error."

Similarly, defense counsel did not object when the State's expert witness, Dr. Harold Hall, noted that he reviewed a "criminal history summary record of offenses in California and Hawaii." Although the State had warned Dr. Hall not to mention other conduct, he testified on direct examination that: "There was definite foreknowledge in terms of the violence that was going to occur. *And there is also a history of — of a similar experience.* So this didn't take the defendant by surprise." (Emphasis added.) Defense counsel objected to this remark. The judge instructed the jury to disregard the statement and struck it from the record.

In *State v. Kahinu*, 53 Haw. 536, 549–50, 498 P.2d 635, 643–44 (1972), *cert. denied*, 409 U.S. 1126 (1973), we acknowledged that it is for the trial court to determine

whether the deliberate and unresponsive injection by prosecution witnesses of irrelevant references to prior arrests, conviction, or imprisonment merits a mere prophylactic cautionary instruction or a mistrial.

> [T]he reception of evidence pertaining to prior convictions . . . may, under the circumstances of a particular case, be harmless beyond a reasonable doubt, applying the principle announced in *Chapman v. California*, 386 U.S. 18 . . . (1967). Under *Chapman*, an error of constitutional proportions can be disregarded as harmless if the prosecution proves beyond a reasonable doubt that the error "did not contribute to the verdict obtained." 386 U.S. at 24.

*Id.* at 550, 498 P.2d at 644 (quoting *Tucker v. United States*, 431 F.2d 1292, 1293 (9th Cir. 1970), *aff'd*, 404 U.S. 443 (1972)). Therefore, it was within the judge's discretion to determine that Dr. Hall's improper remark merited only a curative instruction to the jury.

Appellant further contends that the instruction to disregard and strike Dr. Hall's statement was insufficient to remedy the prejudice to Appellant. We disagree. Although Dr. Hall's remark was improper, it did not constitute reversible error. Despite the fact that Dr. Hall was an overzealous witness for the prosecution, we have held that, "[i]n determining whether prosecutorial misconduct constitutes reversible error, we have considered the nature of the misconduct, the promptness of a curative instruction or lack of it, and the strength or weakness of the evidence against the defendant." *See State v. Senteno*, 69 Haw. 363, 366, 742 P.2d 369, 372 (1987) (citation omitted).

In determining whether improper remarks made by a witness constitutes reversible error, the same analysis used for prosecutorial misconduct is applicable. In this case, Dr. Hall mentioned other conduct after the State warned him not to. The defense attorney properly objected, and the judge immediately advised the jury to disregard the remark. Under the circumstances, we view the judge's curative instruction as sufficient.[2]

Any prejudicial effect of Dr. Hall's statement was removed by the prompt action of the trial judge. Furthermore, there was overwhelming evidence in the record to support the first degree murder verdict beyond a reasonable doubt, based upon Appellant's admissions and the surrounding facts and circumstances. *See generally State v. Kahalewai*, 55 Haw. 127, 129, 516 P.2d 336, 338 (1973).

## B.  Statements made by the Panel Members

When explaining their opinions, the sanity panel members referred to statements Appellant had made during her examination. Appellant claims that such testimony by the medical examiners violated HRS § 704–416[3] and should not have been admissible at trial.

---

[2] "[E]ven though a prosecutor's remarks may have been improper, any harm or prejudice resulting to the defendant can be cured by the court's instructions to the jury. In such cases it will be presumed that the jury adhered to the court's instructions." *State v. Amorin*, 58 Haw. 623, 629, 574 P.2d 895, 899 (1978) (citation omitted). The same holds true with respect to a witness for the prosecution.

[3] HRS § 704–416 (1985) provides:

A statement made by a person subjected to examination or treatment pursuant to this chapter for the purposes of such examination or treatment shall not be admissible in evidence against him in

She also relies on *State v. Wallace*, 71 Haw. 591, 593–94, 801 P.2d 27, 28 (1990), which held that if a statement is an admission of guilt, then it is not admissible, even on the issue of the defendant's mental or physical condition.

The State argues that none of the statements made by the panel members constituted "admissions of guilt" and are therefore admissible. For example, Dr. Furukawa, one of the panel members, reported on direct examination that Appellant said:

> "Then it all came to a head. She didn't care about me anymore. I just wanted the pain to — to go away. She had affairs with four or five other women in the facility." She said, "I don't recall what I wanted to do, I just wanted the pain to stop." [She] said, ["] after she died the pain has not gone away."

Similarly, Mattoon testified that he did not speak with Appellant about the specifics of the offense. When he was cross–examined by the State, he acknowledged that, "[s]he did speak about it in a general — very general term [sic] about how could she have done such a thing because [she] loved her so much." Mattoon also noted on direct examination that:

> In her written statement, she reviewed the turmoil that she was going through prior to the alleged offense and very close to the time of the alleged — alleged offense. Even that particular day she described the — almost a sense of calm

---

any penal proceeding on any issue other than that of his physical or mental condition, but it shall be admissible upon that issue, whether or not it would otherwise be deemed a privileged communication, unless such statement constitutes an admission of guilt of the offense charged.

detached disassociated type of feeling. In — not exactly her words, but to the effect that although there was a lot of activity around her with a lot of people, there didn't seem to be much noise, like she was in some kind of a dream state or trance—like state.

After reviewing the transcript, we conclude that Appellant's statements to the experts were not admissions of guilt. Since Appellant previously admitted stabbing Agnes, the main issue was whether her mental condition negated criminal responsibility. The statements were admissible to determine her state of mind prior to and after the stabbing incident.

This case is clearly distinguishable from *Wallace*. In *Wallace*, the defendant did not concede that he committed the burglary in question. However, the prosecutor asked the experts who examined defendant what he had told them about the burglary with which he was charged.[4] In this case, Appellant's statements to the experts did not amount to a confession of guilt.

Assuming *arguendo* that Appellant's statements were admitted in violation of HRS § 704–416, a reversal would be necessary only if the erroneously introduced evidence did not constitute harmless error or there was a reasonable possibility that the erroneous admission of evidence may have contributed to the defendant's conviction of

---

[4] For example, the prosecutor asked the experts the following: (1) whether the defendant indicated he was under the influence of drugs at the time of the burglary incident; (2) whether the defendant was able to remember the burglary incident; and (3) whether Dr. Knight and defendant talked about the burglary and what was related to Dr. Knight about the burglary. *Wallace*, 71 Haw. at 592–93, 801 P.2d at 28.

murder. *See* ***State v. Domingo***, 69 Haw. 68, 71, 733 P.2d
690, 692 (1987).

Appellant's statements were not prejudicial. The
statements were elicited on the direct examination of
Appellant's expert witnesses in order to demonstrate the
extent of her relationship with Agnes, and the emotional
turmoil Appellant experienced as a result of their break
up. Furthermore, Appellant's counsel did not object to
Mattoon's statement on cross–examination.

Unlike *Domingo*, these statements were adduced for
the purpose of *enhancing* Appellant's argument that she
did not have complete control of her mental faculties at the
time of the incident. Thus, Appellant herself offered state-
ments to support her defense of mental irresponsibility.

## C.   State's retention of Dr. Hall as a witness

Dr. Hall was appointed by the court pursuant to HRS
§ 704–404(2) (1985)[5] and retained by the State to testify
on the issue of whether Appellant was under extreme
mental or emotional disturbance at the time of the inci-
dent. Appellant argues that this situation created a con-
flict of interest and diminished her statutory right to a
panel of neutral court examiners. She further argues that
Dr. Hall could not have been a neutral witness while being
paid by the State. However, Appellant cites no cases to
support her contention.

The State argues that Dr. Hall's examination of
Appellant as a member of the panel did not create any con-
flict of interest, because the doctor testified that he was

---

[5] HRS § 704–404(2) (1985) provides in relevant part:

"Upon suspension of further proceedings in the prosecution, the
court shall appoint three qualified examiners to examine and
report upon the physical and mental condition of the defendant."

paid by the State for his time and not his conclusions. The State also submits that Dr. Hall was retained by the Prosecutor's Office only for the purpose of examining the Appellant on the issue of whether she acted under the influence of extreme mental or emotional disturbance.

Appellant's argument is without merit. Appellant was entitled to cross–examine Dr. Hall concerning any alleged conflict of interest problems but failed to raise this issue at trial. Furthermore, HRS § 704–410(1) (1985) (emphasis added) provides that:

> At the hearing pursuant to section 704–405 or upon *trial, the examiners who reported pursuant to section 704–404 may be called as witnesses by the prosecution, the defendant, or the court.* If the issue is being tried before a jury, the jury may be informed that the examiners or any of them were designated by the court . . . .

It is also implicit from the plain language of HRS § 704–410(3) (1985)[6] that an examiner may later testify on behalf of one party on the issue of the defendant's responsibility for the conduct or state of mind comprising the elements of the alleged offense without creating a conflict of interest.

---

[6] HRS § 704–410(3) (1985) provides:

When an examiner testifies on the issue of the defendant's responsibility for conduct alleged or the issue of the defendant's capacity to have a particular state of mind which is necessary to establish an element of the offense charged, he shall be permitted to make a statement as to the nature of his examination, his diagnosis of the physical or mental condition of the defendant at the time of the conduct alleged, and his opinion of the extent, if any, to which the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law or to have a particular state of mind which is necessary to establish an ele-

### D. Appellant's absence during the settlement of jury instructions in which the insanity defense was withdrawn

Appellant argues that her constitutional right to be present at all stages of trial was violated because her attorney, without her consent, waived her presence during the conference settling jury instructions. According to Appellant, the waiver was improper under *State v. Okumura*, 58 Haw. 425, 570 P.2d 848 (1977). Appellant further contends that there is nothing in the record to indicate that she "voluntarily absented" herself from the trial. The State, however, argues that Appellant's presence was not required under Hawaii Rules of Penal Procedure (HRPP) 43(c)(3).[7] We agree.

"It has long been recognized in the American criminal justice system that a defendant has a right to be present at all stages of his trial." *Okumura*, 58 Haw. at 427, 570 P.2d at 851 (citation omitted); *see also State v. Texidor*, 73 Haw. 97, 828 P.2d 280 (1992). This right is founded upon the confrontation and due process clauses of both the Hawaii and United States Constitutions. *See Okumura*, 58 Haw. at 427, 570 P.2d at 851. Therefore, in a proceeding where the jury is present or testimony is given, the defendant's presence is constitutionally required. However, a defendant's absence from a conference settling jury instructions, whether waived or not, does not implicate protected rights because the conference does not involve the jury's presence or witness testimony.

---

ment of the offense charged was impaired as a result of physical or mental disease, disorder, or defect at that time.

[7] HRPP 43(c)(3) provides in relevant part that a defendant need not be present "at a conference or argument upon a question of law."

Moreover, the constitutional requirement that a defendant be present at all stages of his trial was codified in HRPP 43.[8] *See Okumura*, 58 Haw. at 427, 570 P.2d at 851. Because the HRPP was patterned after Rule 43 of the Federal Rules of Criminal Procedure, case law arising from it is instructive. *See Okumura*, 58 Haw. at 428 n.4, 570 P.2d at 851 n.4. Therefore, we may follow federal case law in determining whether the conference settling jury instructions is a "conference or argument upon a question of law" under HRPP 43.

Federal courts have held and we agree that a defendant does not have a constitutional or statutory right to attend a conference determining the legal instructions with which the trial court will charge the jury. Several cases have held that settling jury instructions is a "conference or argument upon a question of law." *See United States v. Sherman*, 821 F.2d 1337, 1339 (9th Cir. 1987); *United States v. Graves*, 669 F.2d 964, 972 (5th Cir. 1982).

Appellant's reliance on *Okumura* is misplaced. The sole issue in *Okumura* was whether the defendant was "voluntarily absent" from the courtroom within the meaning of HRPP 43. Okumura was absent from the courtroom during the closing arguments, the court's instructions to the jury, and the rendering of the jury's verdict. Okumura later appealed on the ground that he was deprived of his right to be present at all stages of his trial. Unlike *Okumura*, we conclude that Appellant was not deprived of a constitutional right. Therefore, it is unnecessary for us to address whether Appellant "voluntarily absented" herself from the conference settling the jury instructions.

---

[8] As of January 1, 1977, the Hawaii Rules of Criminal Procedure have been superseded by the Hawaii Rules of Penal Procedure.

Similarly, because Appellant had no constitutional right to be present, it was not error for Appellant's attorney to waive her presence.

Appellant also argues that she was entitled to an instruction on every defense having any support in the evidence, no matter how weak, inconclusive, or unsatisfactory the evidence may have been. *See State v. Pinero*, 70 Haw. 509, 525, 778 P.2d 704, 715 (1989). Thus, when her counsel withdrew an instruction on the defense of insanity, she was deprived of her right to have the jury consider all defenses.

Appellant's argument is without merit. Although the record is silent with respect to defense counsel's reasoning, the decision appears tactical. At the opening of the trial, defense counsel told the jury that the evidence would lead them to conclude that Appellant did not have control of her mental faculties due to a mental condition and emotional disturbance. Defense counsel also told the jury that they would find Appellant not guilty of murder in the first degree and that they would decide whether she was guilty of manslaughter or should be acquitted by reason of insanity. Because the insanity defense instruction was withdrawn after all the evidence was submitted, it appears that defense counsel changed his strategy in order to give Appellant a clear opportunity for a manslaughter verdict rather than an outright acquittal based on marginal evidence of legal insanity.

Defense counsel's tactical decision at trial will not be questioned by a reviewing court. *State v. Antone*, 62 Haw. 346, 352, 615 P.2d 101, 106 (1980) (citation omitted). Lawyers require and are permitted broad latitude to make on–the–spot strategic choices in the course of trying a case. *Id.* In *State v. El'Ayache*, 62 Haw. 646, 649, 618 P.2d 1142, 1144 (1980), this court stated that: "[o]ne of

the legitimate interests in the criminal trial process is the right of defense counsel to make an appropriate judgment on the trial tactics and procedure to be employed in defense of his client based upon his knowledge of the facts and law of the case . . . ."

It appears that Appellant's defense counsel chose to rely on the defense of extreme emotional disturbance instead of the insanity defense. The testimony presented indicates that the extreme emotional disturbance defense was a better choice.[9] After defense expert, Dr. Furukawa, testified that Appellant's cognitive and volitional control were not *substantially* impaired, the insanity defense was seriously weakened.

We conclude that defense counsel's determination not to rely upon the insanity defense was "within the range of competence demanded of attorneys in criminal cases." *See* *State v. Antone*, 62 Haw. at 348, 615 P.2d at 104.

### E. Ineffective assistance of counsel

Appellant alleges that ineffective assistance of counsel was rendered when her attorney:

1) allowed Appellant's prior bad acts to be introduced into evidence;

2) allowed Appellant's admissions to the mental examiners to be introduced into evidence;

---

[9] Only defense expert Mattoon believed Appellant's volitional control was affected by the extreme stress she was going through. Dr. Furukawa, the defense's other expert, testified that Appellant must have been in some kind of emotional turmoil because the subsequent events would not have taken place without such turmoil. Similarly, Dr. Hall, the State's expert witness, testified that Appellant was suffering from moderate and not overwhelming stress.

3) failed to object to Dr. Hall's testimony on the manslaughter and insanity defense, knowing that there was a conflict of interest problem when the prosecutor hired him to testify;

4) waived Appellant's presence at the settling of the jury instructions, and then unilaterally withdrew Appellant's insanity defense and instruction; and

5) failed to move for a mistrial when Dr. Hall made reference to a prior bad act which violated à pretrial order.

In reviewing a claim of ineffective assistance of counsel, the standard for determining adequacy of representation is whether the assistance provided, viewed as a whole, is within the range of competence demanded of attorneys in a criminal case. *State v. Hirano*, 8 Haw. App. 330, 338, 802 P.2d 482, 486 (1990) (citation omitted). A defendant claiming ineffective assistance of counsel has the burden of showing: 1) specific errors or omissions that reflect counsel's lack of skill, judgment, or diligence; and 2) that the errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. *See Antone*, 62 Haw. at 348–49, 615 P.2d at 104 (citation omitted).

Appellant's claim that her defense counsel was ineffective lacks merit. The first alleged "error" lacks merit because Mattoon's statement was proper pursuant to HRE 705. His statement was made during cross-examination, and it pertained to facts upon which he based his opinion. Moreover, Mattoon opened this area for cross-examination when he testified that the symptoms of Appellant's disorder included impulsiveness which he discovered during his review of previous written reports.

The second and third alleged errors fail to reflect defense counsel's lack of skill or judgment.

The fourth alleged error lacks merit because, as we have concluded, Appellant's presence at the settlement of the jury instructions was not required. Appellant has also failed to meet her burden of showing that withdrawing the insanity defense adversely reflected on defense counsel's judgment, skill, or diligence. It appears that defense counsel's decision was tactical. Moreover, there is nothing in the record to indicate that Appellant disapproved of this decision during trial.

Furthermore, the withdrawal of the insanity defense instruction did not cause the substantial impairment of a potentially meritorious defense. In this case, there was sufficient evidence to show that the defense lacked merit and might have confused the jury. All three members of the panel found Appellant's cognitive capacity unimpaired. Only Mattoon testified that Appellant's volitional capacity was substantially impaired due in part to extreme emotional disturbance. Dr. Hall testified that Appellant was not experiencing extreme mental or emotional disturbance at the time of the incident. Similarly, Dr. Furukawa testified that Appellant was not suffering from any extreme emotional disturbance at the time of the stabbing. With regard to her volitional capacity, Dr. Furukawa testified that Appellant's deficit was not substantial.

Finally, we conclude that Appellant was not denied effective assistance of counsel when her attorney failed to move for a mistrial after Dr. Hall made his challenged remark. The failure of counsel to assert every plausible legal theory in defense of an accused does not in itself reflect his ignorance of the law. *Stough v. State*, 62 Haw. 620, 623, 618 P.2d 301, 304 (1980).

## F.   Cumulative effect of errors

Appellant contends that the cumulative effect of the alleged errors discussed, *supra*, deprived her of a fair trial.  After carefully reviewing the record, we conclude that the individual errors raised by Appellant are by themselves insubstantial.   Thus, it is unnecessary to address the cumulative effect of these "alleged errors." *See State v. Heirs of Kapahi*, 48 Haw. 101, 120, 395 P.2d 932, 943 (1964).

Affirmed.

On the briefs:

*Richard T. Pafundi*, for defendant–appellant.

*Caroline M. Mee*, Deputy Prosecuting Attorney, for plaintiff–appellee.