STATE OF HAWAI`I Plaintiff-Appellee,
v.
KAMERON LAWHEAD, Defendant-Appellant
No. 29019
Intermediate Court of Appeals of Hawaii.
March 27, 2009
On the briefs:
Emmanuel G. Guerrero, for Defendant-Appellant.
Tracy Murakami, Deputy Prosecuting Attorney, County of Kauai, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
By: RECKTENWALD, C.J., WATANABE and LEONARD, JJ.
Defendant-Appellant Kameron Lawhead appeals from the February 1, 2008 Judgment of Conviction and Sentence entered in the Circuit Court of the Fifth Circuit (circuit court),[1] convicting him of Promoting a Dangerous Drug in the Third Degree (Count I), in violation of Hawaii Revised Statutes (HRS) § 712-1243 (Supp. 2008), and Unlawful Use of or Possession with Intent to Use Drug Paraphernalia, in violation of HRS § 329-43.5(a) (1993).
The charges stemmed from a May 21, 2006 incident in which Lawhead's mother found Lawhead sleeping on his bed with a pipe nearby. Lawhead's mother called Kaua'i police, who arrested Lawhead and recovered the pipe, which was later determined to contain methamphetamine residue.
A jury found Lawhead guilty on both counts. The circuit court sentenced Lawhead to a term of five years' imprisonment as to each count, to be served consecutively, and with a mandatory minimum of one year and eight months as to Count I.
Lawhead raises the following points of error on appeal:
(1) "The [circuit] court erred in failing to sua sponte grant a mistrial when [Officer] Kennison Nagahisa testified that [Lawhead] was on a `BOLO' status, a `be on the look out status'" in violation of a defense motion in limine.
(2) "The [circuit] court erred in admitting into evidence the opinion of [Officer] Nagahisa who not only rendered expert opinion when he was not qualified to do so, but also testified to clear hearsay testimony that was received as substantive evidence in violation of [Lawhead]'s right to confrontation."
(3) "The [deputy prosecuting attorney (DPA)] committed prosecutorial misconduct when, during rebuttal, he impermissibly commented on... Lawhead's right to remain silent."
(4) "There was insufficient evidence to support a conviction for the drug and paraphernalia offenses[.]"
After a careful review of the record and the briefs submitted by both parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Lawhead's points of error as follows:
(1) The circuit court did not err in failing to sua sponte declare a mistrial based on Officer Nagahisa's testimony relating to Lawhead being on a "BOLO" status. The factors considered in addressing whether a witness's improper comments warrant a new trial are "the nature of the misconduct, the promptness of a curative instruction or lack of it, and the strength or weakness of the evidence against the defendant." State v. Samuel, 74 Haw. 141, 148, 838 P.2d 1374, 1378 (1992) (citation omitted).
With regard to the first factor, Officer Nagahisa was interrupted before he said anything about why Lawhead was on "BOLO" status, minimizing the prejudice from the comment. Also, although the DPA should have instructed Officer Nagahisa about the court's ruling on the motion in limine prior to Officer Nagahisa giving testimony, it does not appear that the DPA was intentionally trying to induce a violation of the court's ruling. Officer Nagahisa's testimony was non-responsive to the question asked by the DPA. Thus, this factor weighs against requiring a new trial.
With regard to the second factor, the circuit court promptly instructed the jury to disregard the DPA's question and Officer Nagahisa's partial response. See State v. Kahinu, 53 Haw. 536, 549, 498 P.2d 635, 644 (1972) ("As a general rule, it is for the circuit court to determine whether a situation involving the use of the `evidential harpoon' merits a mere prophylactic cautionary instruction or the radical surgery of declaring a mistrial."). A jury is presumed to follow the court's instructions and there is nothing in the record to suggest that the jury failed to do so in the instant case. State v. Cardus, 86 Hawai'i 426, 438, 949 P.2d 1047, 1059 (App. 1997) ("It is presumed that the jury follows the court's instructions. " ) .
Finally, with regard to the third factor, there was strong evidence of Lawhead's guilt. See section (4) below.
(2) With regard to Officer Nagahisa's testimony in response to questions from the DPA about the "crash portion" of the "cycle of methamphetamine use," Lawhead waived the issue by failing to properly preserve it for appeal. Additionally, any error was harmless beyond a reasonable doubt.
Lawhead argues that the circuit court erred because Officer Nagahisa was not qualified to give what Lawhead contends was expert testimony, and because Officer Nagahisa's testimony was hearsay. At trial, defense counsel initially objected on the ground that the testimony was irrelevant and lacked foundation, and the circuit court sustained the objection. After the DPA elicited additional foundation, defense counsel then objected again, but solely on the basis that the DPA's question was leading. It was not until after the DPA concluded his direct examination of Officer Nagahisa that defense counsel objected again based on lack of foundation, and moved to strike.
Lawhead failed to preserve any error based on hearsay, since no such objection was raised at trial. See State v. Crisotomo, 94 Hawai'i 282, 290, 12 P.3d 873, 881 (2000) ("A hearsay objection not raised or properly preserved in the trial court will not be considered on appeal. This is true even where the testimony is objected to on other grounds.") (citations omitted); see also State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases").
Moreover, Lawhead's renewed objection based on lack of foundation, which was not made until after the DPA completed his direct examination of Officer Nagahisa, was untimely and therefore, this basis for appeal was waived as well. Hawaii Rules of Evidence Rule 103(a); Lee v. Elbaum, 77 Hawai'i 44 6, 452-53, 887 P.2d 656, 662-63 (App. 1993).
In any event, any error in the admission of this testimony was harmless beyond a reasonable doubt. State v. Toyomura, 80 Hawai'i 8, 27, 904 P.2d 893, 912 (1995) (holding that any error in the admission of improper lay opinion testimony on the part of the officer was harmless). Officer Nagahisa did not testify that Lawhead appeared to be in a "crash state" from methamphetamine use. In addition, the significance of Officer Nagahisa's testimony was limited by his admission that although he had encountered people he "suspected" were in a "crash state" he "[couldn't] really tell," and could not recall if he ever found any paraphernalia next to those people.
During closing arguments, the DPA did not argue that Lawhead was in a "crash state" when officers arrived at his house. Indeed, the only argument the State made with respect to Officer Nagahisa's testimony concerned the use of the pipe recovered next to Lawhead.
Finally, as we discuss in section (4), there was strong evidence adduced at trial establishing Lawhead's guilt. State v. Yamada, 116 Hawai'i 422, 439, 173 P.3d 569, 586 (App. 2007) (given factors including "the strength of the evidence... we hold the error to be harmless beyond a reasonable doubt").
(3) The circuit court did not abuse its discretion in denying Lawhead's motion for a mistrial based on the DPA's comments in closing argument. State v. Rogan, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999). We review allegations of prosecutorial misconduct under the harmless beyond a reasonable doubt standard. Id. The factors to consider in evaluating whether a prosecutor's allegedly improper comments might have contributed to the conviction are "the nature of the conduct," "the promptness of a curative instruction," and "the strength or weakness of the evidence against the defendant." Id.
With regard the nature of the conduct, "[t]here is nothing more basic and more fundamental than that the accused has a constitutional right to remain silent, and the exercise of this privilege may not be used against him." State v. Mainaaupo, 117 Hawai'i 235, 252, 178 P.3d 1, 18 (2008). However, the comment by the DPA was ambiguous, and could be interpreted as referring to the content of Lawhead's statement at the police station, rather than his failure to make a statement at the time of his arrest. Thus, it does not appear from the record that the comment would lead the jury to "naturally and necessarily take it to be a comment" on Lawhead's post-arrest silence or failure to testify. See State v. Smith, 106 Hawai'i 365, 375, 105 P.3d 242, 252 (App. 2004) (citing State v. Padilla, 57 Haw. 150, 158, 552 P.2d 357, 362 (1976)).
Second, the circuit court promptly instructed the jury to "disregard the last statement made by [the DPA]." Since juries are presumed to "abide[] by the court's admonition to disregard [a] statement," Rogan, 91 Hawai'i at 415, 984 P. 2d at 1241, the curative instruction negated any prejudicial effect the DPA's comment might have had.
Finally, as we discuss in section (4), there was strong evidence establishing Lawhead's guilt. Thus, we conclude that the circuit court did not abuse its discretion in denying Lawhead's motion for a mistrial.
(4) Considering the evidence in the light most favorable to the State, State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998), we conclude that there was substantial evidence of Lawhead's guilt. Specifically, there was substantial evidence that Lawhead had constructive possession of the pipe and the methamphetamine that was found inside it. State v. Moniz, 92 Hawai'i 472, 476-77, 992 P.2d 741, 745-46 (App. 1999).
Lawhead's mother testified that she found the pipe laying "in the center to the end" of Lawhead's bed where he was sleeping. Lawhead's mother further testified that the pipe did not belong to her. Although Lawhead's girlfriend Vanessa lived with him, she was not present at the time Lawhead's mother recovered the pipe. Furthermore, Officer Takemoto testified that Lawhead denied that the pipe belonged to Vanessa because "she was pregnant" at the time. While Lawhead denied ownership of the pipe in his statement to Officer Takemoto, and indicated that anyone could have put the pipe in his bed, there was no evidence adduced at trial as to who might have put the pipe there. Moreover, Lawhead admitted to Officer Takemoto that he had smoked crystal methamphetamine "three weeks prior" and there was no evidence of any other methamphetamine user who had access to Lawhead's room.
From the evidence described above, a jury could have rejected Lawhead's statement that someone put the pipe in Lawhead's bed, cf. State v. Birdsall, 88 Hawai'i 1, 9, 960 P. 2d 729, 737 (1998) (noting that the jury may accept or reject any witness's testimony in whole or in part), and reasonably inferred that Lawhead "possess[ed]" the pipe "with [the] intent to use. . . [it to] ingest, inhale, or otherwise introduce into the human body a controlled substance[,]" HRS § 329-43.5, and that he "knowingly possessed" the crystal methamphetamine found in the pipe, HRS § 712-1243.
Accordingly, we affirm the February 1, 2008 Judgment of Conviction and Sentence entered in the Circuit Court of the Fifth Circuit.
NOTES
[1] The Honorable Kathleen N.A. Watanabe presided.