**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000535
21-APR-2025
08:47 AM
Dkt. 130 SO**

NO. CAAP-22-0000535

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
JAMES PU, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-19-0000683(1))

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

Defendant-Appellant James **Pu** appeals from the Circuit Court of the Second Circuit's September 8, 2022 "Amended Judgment; Conviction and Probation Sentence; Terms and Conditions of Probation; Notice of Entry" (**September 8, 2022 Amended Judgment**).[1] (Formatting altered.)

---

[1]  The Honorable Kirstin M. Hamman presided.

Pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(b), we treat Pu's appeal as following the circuit court's entry of its amended judgment. See HRAP Rule 4(b)(1), (4) (deeming premature notices of appeal as filed on the date the judgment or order is entered); Poe v. Hawaiʻi Lab. Rels. Bd., 98 Hawaiʻi 416, 419, 49 P.3d 382, 385 (2002) (explaining time for filing notice of appeal runs from entry of the first amended judgment impacting a party's rights or obligations).

On appeal, Pu challenges (1) the failure to conduct a colloquy, (2) the failure to conduct a competency examination, and (3) the sufficiency of the evidence.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the issues raised and the arguments advanced, we resolve this appeal as discussed below and affirm.

On July 21, 2019, Jeffrey **Funicello**, his then-girlfriend Elizabeth **Kempton**, and his two minor children, **Son** and **Daughter**, (collectively, **Funicellos**) camped at Koki Beach in Hāna, Maui.  Camping is not allowed at Koki Beach.  Pu, who lives near Koki Beach, was returning home with friends, Mark **Mathes** and Elijah **Gold**, when they saw the Funicellos' tent at Koki Beach.  Pu, Mathes, and Gold confronted the Funicellos, and a brawl ensued.

Plaintiff-Appellee **State** of Hawaiʻi charged Pu with nine counts via indictment.[2]  Following a trial, the jury found

---

[2]  A grand jury indicted Pu as a principal and/or accomplice on the following offenses:

**Count 1:**  Assault in the First Degree, in violation of Hawaiʻi Revised Statutes (**HRS**) § 707-710(1) (2014), as to Funicello, and subject to an extended term of imprisonment as a hate crime in accordance with HRS §§ 706-661 and -662(6) (2014);

**Count 2:**  Criminal Property Damage in the First Degree, in violation of HRS § 708-820(1)(a) (2014), as to Shawn Susa;

(continued . . .)

Pu guilty of (1) the included offense of Attempted Assault in the Second Degree (Count 1); (2) Terroristic Threatening in the Second Degree (Count 4); and (3) Endangering the Welfare of a Minor in the Second Degree (Counts 7 and 8).

The circuit court sentenced Pu to, inter alia, a four-year term of probation for Count 1 and a one-year term of probation for each of the remaining counts, with all terms to run concurrently. Pu timely appealed, raising three points of error.

**(1)** In his first point of error, Pu contends the circuit court erred by holding three chambers conferences

---

(. . . continued)

Count 3: Unauthorized Entry into Motor Vehicle in the First Degree, in violation of HRS § 708-836.5 (2014), as to the Nissan Frontier;

Count 4: Terroristic Threatening in the Second Degree, in violation of HRS § 707-717(1) (2014), as to Funicello;

Count 5: Assault in the Third Degree, in violation of HRS § 707-712(1)(a) (2014), as to Shawn Susa;

Count 6: Terroristic Threatening in the Second Degree, in violation of HRS § 707-717(1), as to Kempton and Funicello;

Count 7: Endangering the Welfare of a Minor in the Second Degree, in violation of HRS § 709-904(2) (2014);

Count 8: Endangering the Welfare of a Minor in the Second Degree, in violation of HRS § 709-904(2); and

Count 9: Harassment, in violation of HRS § 711-1106(1)(b) and/or (f) (2014), as to Funicello.

Counts 2, 3, 5, and 9 were dismissed with prejudice. The jury found Pu not guilty of Count 6.

3

without conducting an on-the-record colloquy establishing a waiver of his constitutional right to be present.

"Before accepting the waiver of a fundamental right, a trial court must engage in an on-the-record colloquy with the defendant." State v. Wilson, 144 Hawaiʻi 454, 463, 445 P.3d 35, 44 (2019) (providing the right to counsel, the right to trial by jury, and the right to testify as examples of fundamental rights requiring an on-the-record colloquy). "A defendant in a criminal case has a procedural and constitutional 'right to be present whenever the court communicates with the jury.'" State v. Pokini, 55 Haw. 640, 651, 526 P.2d 94, 105 (1974) (citations and footnote omitted).

But "[w]hile the right to be present is 'an essential condition of due process,' it is not absolute." United States v. Montoya, 82 F.4th 640, 647 (9th Cir. 2023) (citation omitted). Moreover, "[a] defendant need not be present" where "the proceeding is a conference or argument upon a question of law[.]" Hawaiʻi Rules of Penal Procedure Rule 43(c)(2); State v. Samuel, 74 Haw. 141, 155, 838 P.2d 1374, 1381 (1992) ("Several cases have held that settling jury instructions is a 'conference or argument upon a question of law.'" (citations omitted)).

Here, Pu challenges the circuit court's failure to conduct an on-the-record colloquy where he was absent from conferences addressing the following jury communications:

4

(1) requesting a power cable and a large screen monitor; (2) informing the court it would not be making a decision at the end of the first day of deliberations; (3) asking, "Can attempted assault (1, 2, or 3) be committed at different starting points in a physical confrontation, not just at the beginning of the incident"; and (4) requesting, "Please provide the transcript of Officer Thomas Hifo's courtroom testimony." (Formatting altered.)

As to the conferences regarding these jury communications, Pu's counsel was present and the jury communications involved immaterial requests (power cable and monitor) or legal questions. And notably, Pu does not challenge the circuit court's responses to the jury communications.

Based on the particular circumstances of this case, we cannot say that the omission of an on-the-record colloquy for Pu's absence during the chambers conferences requires this court to vacate Pu's convictions. See, e.g., Montoya, 82 F.4th at 647; Samuel, 74 Haw. at 155, 838 P.2d at 1381.

**(2)** Pu also contends the "record lacks any foundation with respect to the minor children's understanding the duty of a witness to tell the truth[,]" and that the "trial court should have, sua sponte, conducted a competency hearing of the child witnesses to assure [they] had an understanding [of] the duty of a witness to tell the truth." (Formatting altered.)

As an initial matter, Pu fails to cite in his points of error where in the record he brought the absence of a competency examination to the circuit court's attention. Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4). Thus, Pu waived any challenge to the absence of a competency examination. See id.

Nonetheless, Hawaiʻi Rules of Evidence (**HRE**) Rule 601 provides that "[e]very person is competent to be a witness except as otherwise provided in these rules." The rules require the witness have personal knowledge and take an oath to testify truthfully. HRE Rules 602, 603. "A person is disqualified to be a witness if the person is (1) incapable of expressing oneself so as to be understood, . . . or (2) incapable of understanding the duty of a witness to tell the truth." HRE Rule 603.1.

"There is no precise age within which children are excluded from testifying. Their competency is to be determined, not by their age, but by the degree of their knowledge and understanding." State v. Kelekolio, 74 Haw. 479, 525, 849 P.2d 58, 79 (1993) (cleaned up). "[T]he question of testimonial competency must be determined on a case by case basis." Id. at 528, 849 P.2d at 80.

In Kelekolio, "there was an inadequate showing of competency" where the witness responded "good" when asked if lying was good or bad, the witness was unable to identify the

6

defendant who was present in court, and the witness did not appear to know the meanings of terms she used while testifying. Id. The Hawaiʻi Supreme Court thus held that "the issue of the complainant's competency to testify was reasonably called into question[,]" and "the trial court committed plain error in failing to engage in an independent inquiry and make an express finding as to" competency. Id.

In the points of error and argument sections of his opening brief, Pu points to no part of Son's or Daughter's testimony to show that their competency to testify should reasonably be called into question. And our review of their testimonies reveal no reasonable question as to their competency to testify. Son and Daughter were present during the incident, were duly sworn in prior to testifying, and provided responsive answers to the questions asked.

Thus, the circuit court did not plainly err in permitting Son and Daughter to testify without a competency examination.

**(3)** Finally, Pu challenges the sufficiency of the evidence.

**(a)  Attempted Assault in the Second Degree**

A person commits assault in the second degree if they intentionally, knowingly, or recklessly cause substantial bodily injury to another. Hawaiʻi Revised Statutes (**HRS**) § 707-

7

711(1)(a) (Supp. 2018). "Substantial bodily injury" is "bodily injury which causes: (1) a major avulsion, laceration, or penetration of the skin; (2) a burn of at least second degree severity; (3) a bone fracture; (4) a serious concussion; or (5) a tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs." HRS § 707-700 (2014) (formatting altered). Attempt is summarized as "intentionally [engaging] in conduct which is a substantial step in a course of conduct intended or known to cause such a result":

> When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

HRS § 705-500(2) (2014) (formatting altered; emphasis added).

Pu only challenges the sufficiency of the evidence establishing the element of substantial bodily injury. Though, for attempt, the State does not need to prove actual substantial bodily injury. See HRS §§ 705-500(2), 707-711(1)(a).

Here, Funicello testified that while Pu had him in a choke hold, the others "were taking their feet and stomping on my face, kicking me in the temple, kicking me in the back of the head, kicking me in the neck." Also, Kempton testified that she saw Pu punch Funicello on the head or neck multiple times.

8

The testimony of being struck in the head, when considered in the strongest light for the prosecution, is sufficient to show a substantial step in causing substantial bodily injury (e.g., a serious concussion).  See HRS §§ 705-500(2), 707-700, 707-711(1)(a); State v. Keawe, 107 Hawaiʻi 1, 4, 108 P.3d 304, 307 (2005) ("[E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]" (citation omitted)); State v. Pulse, 83 Hawaiʻi 229, 244, 925 P.2d 797, 812 (1996) ("The testimony of one percipient witness can provide sufficient evidence to support a conviction.").

Thus, there was sufficient evidence to establish the element of substantial bodily injury for Attempted Assault in the Second Degree.

### (b)  Terroristic Threatening in the Second Degree

HRS § 707-715(1) (2014) defines terroristic threatening in pertinent part as follows:

> A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . or to commit a felony[]
> . . . [w]ith the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

Terroristic threatening in the second degree is committed when "the person commits terroristic threatening other than as

9

provided in section 707-716" (2014) for Terroristic Threatening in the First Degree. HRS § 707-717(1) (2014).

Here, Funicello testified that Pu "said, you're going to have to pay the piper, or something like that[,]" and "I don't care about your kids, your kids are going to watch you die[.]" Kempton testified that after Funicello "hit them and they -- they ran immediately after him[,]" that Pu "said, I'm going to kill you."

This testimony, when considered in the strongest light for the prosecution, was sufficient to establish that Pu recklessly disregarded the risk of terrorizing Funicello when he threatened to cause him bodily injury (i.e., to kill him). See Pulse, 83 Hawai'i at 244, 925 P.2d at 812; Keawe, 107 Hawai'i at 4, 108 P.3d at 307.

### (c) Endangering Welfare of Minors

Pu argues there was insufficient evidence of "violating or interfering with any legal duty of care or protection owed such minor." Pu also argues that because he and "his purported accomplices are not charged with 'the care and custody' of Funicello's minor children, the statute is not, as a matter of law, applicable to" him.

The offense of endangering the welfare of a minor is applicable to any person, whether or not charged with a minor's care or custody:

10

> A person commits the offense of endangering the welfare of a minor in the second degree if, being a parent, guardian, or <u>other person whether or not charged with the care or custody of a minor</u>, the person knowingly endangers the minor's physical or mental welfare by violating or interfering with any legal duty of care or protection owed such minor.

HRS § 709-904(2) (2014) (emphasis added).

The Commentary to HRS § 709-904 explains that the "Code as adopted had limited this offense to a parent, guardian, or other person charged with the care or custody of the minor." HRS § 704-904 cmt. But in 1974, the offense "was broadened to include persons who were not charged with the care or custody of the minor." Id.

Here, Funicello is the father of Son and Daughter. Funicello testified that he told Pu he had "two kids that [were] watching from the tent[,]" and that Pu "said, I don't care about your kids, your kids are going to watch you die[.]" Daughter testified that she felt "[s]cared and threatened" at seeing her "dad being assaulted." Son also testified that he was scared.

Considered in the strongest light for the prosecution, Funicello's testimony indicates Pu was aware that two children were present, that Funicello was the father of the two children, and that it is "practically certain" witnessing the assault of their father would endanger the children's mental welfare, of which their father had a duty to care for or protect. See HRS § 702-206(2)(c) (2014) (defining knowingly as "aware[ness] that

it is practically certain that his conduct will cause such a result"); Pulse, 83 Hawaiʻi at 244, 925 P.2d at 812; Keawe, 107 Hawaiʻi at 4, 108 P.3d at 307.

Thus, Endangering the Welfare of a Minor is not limited to those charged with the care or custody of a minor, and there was sufficient evidence to support Pu's conviction of Endangering the Welfare of Son and Daughter.

Based on the foregoing, we affirm the circuit court's September 8, 2022 Amended Judgment.

DATED:  Honolulu, Hawaiʻi, April 21, 2025.

| On the briefs: | /s/ Katherine G. Leonard<br>Acting Chief Judge |
|---|---|
| Hayden Aluli,<br>for Defendant-Appellant. | /s/ Keith K. Hiraoka<br>Associate Judge |
| Gerald K. Enriques,<br>Deputy Prosecuting Attorney,<br>County of Maui,<br>for Plaintiff-Appellee. | /s/ Sonja M.P. McCullen<br>Associate Judge |